UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

Present: The Honorable    STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Daniel Tamayo | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**    FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I.    Introduction

Plaintiffs Emsurgcare and Emergency Surgical Assistants ("ESA" and collectively, "Plaintiffs") filed ERISA claims for benefits under an insurance plan administered by Defendant Oxford Health Insurance.[1] Second Amended Complaint ("SAC"), ECF No. 23. The Court held a bench trial on July 15, 2025. After considering the arguments and evidence presented at trial and through the administrative record, the Court, for the following reasons, GRANTS IN PART and DENIES IN PART judgment for both parties.

## II.    Legal Standard

In a bench trial, the Court is required to make factual findings and conclusions of law. Fed. R. Civ. P. 52(a). It must state such findings and conclusions either on the record or in "an opinion or memorandum decision." *Id.* "Unlike a motion for summary judgment, a court presiding over a bench trial 'does not determine whether there is an issue of material fact, but actually decides' the disputed facts." *McCulloch v. Hartford Life & Accident Ins. Co.*, No. 19-cv-07716, 2022 WL 2132929, at *1 (N.D. Cal. June 14,

---

[1] Oxford's parent company is UnitedHealth Group.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

2022) (quotations omitted); *see also Kearney v. Standard Ins. Co.*, 175 F.3d 1084-1094-95 (9th Cir. 1999) ("[I]n [an ERISA] trial on the record, . . . the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true."); *Hoffman v. Screen Actors Guild Prodcuers Pension Plan*, 757 F. App'x 602, 605 (9th Cir. 2019) ("To the extent there are factual disputes [in an ERISA case], the district court must resolve those through a bench trial[.]"); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 973 (9th Cir. 2006) (holding that the district erred when it "conducted a bench trial, but failed to make findings of fact on all contested issues").

This opinion provides the required findings of fact and conclusions of law for Plaintiffs' ERISA claims against Defendant. Any finding of fact that actually constitutes a conclusion of law is adopted as such, and vice-versa.

## III.   Findings of Fact[2]

The Court makes the following factual findings based on review of the parties' briefs and the administrative record.

### A.  Plaintiffs performed emergency appendix surgery on Patient.[3]

1. Plaintiffs are medical providers. Second Amended Complaint ¶ 4, ECF No. 23.[4]

2. On May 7, 2021, a patient (hereinafter, "Patient") went to the emergency room to treat severe left lower

---

[2] The Court previously granted the parties' motions to file various portions of the administrative record under seal. ECF No. 64. While that order remains in effect, the Court's factual findings may occasionally refer to materials which were filed under seal. For these facts, the Court determines that public interest in disclosure outweighs the private interests articulated in the parties' motion to seal, and now exempts these specific facts (not the entirely of the administrative record) from the order granting the motion to seal.

[3] The Court includes these headings to guide the reader, but they are not themselves findings of fact.

[4] While allegations in the SAC are not part of the administrative record, the Court will nonetheless cite to some undisputed

:

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

abdominal pain. Administrative Record ("AR") 557-58, ECF No. 61-1. Patient was diagnosed with appendicitis. AR 564.

3. That same day, on May 7, 2021, Plaintiffs performed an emergency colectomy to treat Patient's appendicitis. AR 564. Two surgeons performed the surgery: Dr. Farzin Feizbakhsh (hereinafter, "Dr. Feiz") and Dr. Sean Rim. AR 537. Dr. Feiz acted as the primary surgeon. *Id.* Dr. Rim acted as the assistant surgeon. *Id.*

4. Patient was insured by Defendant Oxford Health Insurance under an insurance plan (the "Plan") governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"). *Id.* ¶¶ 8, 9, 14.

5. Before receiving surgery, Plaintiff assigned his rights to sue under his Plan to Plaintiffs. Declaration of Jonathan A. Stieglitz ("Stieglitz Decl.") ¶ 2, Ex. A, ECF No. 58-1.[5]

**B. The Plan**

6. Defendant is both the claims administrator for the Plan and the Plan's insurer. Def. Mot. for Judgment at 1 (describing Defendant as "the claims administrator and insurer of a fully insured ERISA-governed health plan"), ECF No. 59.[6]

7. The Plan gives Defendant the "final authority" to "[i]nterpret Benefits and other terms, limitations and exclusions set out in [the] *Certification*, the *Schedule of Benefits* and any Riders and/or Amendments;" and (2) "[m]ake factual determinations relating to Benefits." AR 745. In other words, the Defendant makes "administrative decisions regarding whether the [Plan] will pay for any portion of the cost of a health care

---

allegations in the record to provide background when necessary.

[5] While the Stieglitz declaration is not part of the administrative record, the Court nonetheless cites to it to provide context, as this fact is undisputed and does not affect the Court's analysis.

[6] This point is not explicitly stated in the administrative record, but it is not disputed by either party.

:

Initials of Preparer          DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

service [Patient] intend[s] to receive or have received." *Id.*

8. The Plan covers emergency services provided by an out-of-Network provider. AR 726, 728. Specifically, for such services, the Plan agrees to pay an "Allowed Amount," which it defines as "an amount negotiated by us or an amount permitted by law." AR 728.

9. More generally, the Plan determines "Allowed Amounts"—i.e., "the amount [Oxford] determine[s] that [it] will pay for Benefits"—based on its stated "reimbursement policy guidelines." AR 728. Those guidelines state that Defendant develops its policy guidelines "in accordance with one or more of the following methodologies:"

   - "As shown in the most recent edition of the *Current Procedural Terminology (CPT)*, a publication of the *American Medical Association*, and/or the *Centers for Medicare and Medicaid Services (CMS)*.
   - As reported by generally recognized professionals or publications.
   - As used for Medicare.
   - As determined by medical staff and outside medical consultants pursuant to other appropriate sources or determinations that we accept." AR 745-46.

10. The Plan states that if a beneficiary wishes to appeal a benefits determination, the appeal "must be initiated by [the claimant] or [their] authorized representative within 180 days from receipt of an adverse determination[.]" AR 803.

11. Under the Plan, beneficiaries "cannot bring any legal action against [Defendant] to recover reimbursement until [the beneficiary] h[as] completed all the steps in [the Plan's] appeal process[.]" AR 819.

:

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

**C.  Dr. Feiz's claim for reimbursement under the Plan**

**i.      Defendant denied Dr. Feiz's claim for reimbursement under the Plan.**

12. On June 15, 2021, Dr. Feiz billed Defendant $71,500 for Patient's colectomy. AR 3-11.[7]

13. On October 1, 2021, Defendant rejected Dr. Feiz's claim and paid him $0.00. AR 102. As explanation, Defendant provided only the following:

> "We received the information submitted. However, we are unable to process the claim, as one or more of the following items are missing: history and physical; findings on examination; lab, radiology, pathology, and anesthesia test result; consult reports; operative/procedure report; daily progress/treatment/medication notes; physician orders for DME along with copy of invoice and delivery statement."

AR 103. Defendant also sent a corresponding Explanation of Benefits ("EOB"), which provided the same explanation as above. AR 109-113.

**ii.     Dr. Feiz sent medical records to Defendant.**

14. On November 13, 2021, Dr. Feiz submitted close to 150 pages of medical records documenting Patient's colectomy. AR 536-678.

---

[7] Plaintiffs initial billing of Defendant is represented in the administrative record by a series of forms that the Court cannot understand. *See* AR 3-11. The Court's best guess is that these forms represent the underlying claim data that Plaintiffs inputted into an online form on Defendant's website. These forms are not self-explanatory and are largely meaningless to anyone without expertise in this area. Neither party goes to any length to translate these forms. Nonetheless, it is undisputed that these forms represent Plaintiffs' initial claim for reimbursement to Defendant.

:

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

15. Included in these medical records was Patient's operative report. The operative report described the colectomy procedure and listed Dr. Feiz as the primary surgeon and Dr. Rim as the assistant surgeon. The operative report did not list Dr. Feiz's signature at the end of the report. Rather, it only included the word "signed" in its heading, as shown below. AR 537 (emphasis added).



16. Additional medical records beyond the operative report referenced to Dr. Feiz's participation in the surgery. For example, the surgeon's consultation report lists Dr. Feiz as the physician

:

|  |  |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|----------|-------------------|------|---------------|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

performing the consult. AR 540 (emphasis added). Like the operative report, the consult report did not include a digital signature at the bottom. Instead, it included the same "signed" notation in the header. *Id.*



Likewise, the pathologists report listed Dr. Feiz as one of Patient's doctors and identified Patient's diagnosis as "acute suppurative appendicitis." AR 543 (emphasis added). Dr. Keefe signed this report with his handwritten signature. *Id.*

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |



Similarly, "Progress Notes" submitted by Dr. Feiz noted that three days after the procedure, Patient was "awake and alert," his "wounds" were "clean," and that Dr. Feiz would potentially "consider" a post-op CT scan. AR 557. The Progress Note's header also listed the service as "Surgery General." *Id.* Dr. Feiz signed this Progress Note with a digital signature. *Id.*



Initials of Preparer          :

_____    _____

DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

A "Utilization Review" noted that Patient received an "appendectomy" and that "general surgery Dr. Feizbakhsh [was] following[.]" AR 555-57.

Finally, a signed "ISP Hospitalist Discharge Summary" listed Dr. Feiz as Patient's "General Surgery" consultant and noted that Patient received a "laproscopic appendectomy with cecetomy" on "5/7/21." AR 654 (emphasis added).



It further added that Patient will "follow up with general surgery Dr. Feiz[] on 5/14 for JP removal." AR 655 (emphasis added).



                                                                    :

                                          _____    _____
                        Initials of Preparer              DTA
                                          _____    _____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

The ISP report was electronically signed by Dr. Choi. AR 658 (emphasis added).

> No future appointments.
> **Discharge follow-up: Dr Feizbakhsh on 5/14/21**
>
> Total time of visit 45 minutes, with greater than 50% spent with counseling and coordination of care,
> including discussions with consulting physicians and nursing staff, discharge instructions to patient
> and caregivers, prescriptions, and preparation of discharge records.
>
> **Signed: Nicole Unjo Choi, MD 5/12/2021 1:49 PM**
> Time of note may not reflect time of encounter.

### iii.     Dr. Feiz appealed Defendant's denial of benefits.

17. On July 28, 2022, Dr. Feiz appealed Defendant's denial of his claim for benefits. AR 208. In his
    appeal, he argued that Defendant's denial violated both ERISA and the terms of the Plan. *Id.*

18. In his appeal, Dr. Feiz requested that Defendant provide "all medical records used in making this
    medical necessity denial." AR 209.

19. Dr. Feiz's appeal was signed by Joshua Roland Francisco, who Plaintiffs classified as Dr. Feiz and
    Emsurgcare's "representative." Plaintiffs' Trial Brief at 9, ECF No. 58.

20. The appeal included an authorization from Patient. AR 212. The authorization listed Dr. Feiz and
    Emsurgcare as his authorized representative and as the "provider of service."
    *Id.* Patient signed the authorization on May 14, 2021. The authorization stated that it "will expire
    one year from the date [Patient] sign[s] the authorization." *Id.*

### iv.     Defendant denied Dr. Feiz's appeal.

21. On August 29, 2022, Defendant responded to Joshua Francisco by letter to tell him that his appeal

| | : | |
|---|---|---|
| Initials of Preparer | | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

"either did not include the required authorization or the authorization submitted did not include all of the necessary information." AR 241. Defendant did not specify whether the appeal lacked authorization outright or whether the submitted authorization was missing required information. *Id.* The letter then listed ten different requirements for patient authorizations. *Id.*

22. Despite the apparent deficiencies in Dr. Feiz's appeal's authorization, on September 20, 2022, Defendant sent Patient a letter rejecting the appeal on the merits. AR 279. The rejection letter explained that: "[b]ased on our review, according to your Benefit Plan, under the section Review and Determine Benefits in Accordance with our Reimbursement Policies, this request for payment was processed correctly." *Id.*

The rejection letter then copied that section of Patient's Plan verbatim, as displayed below:

"We develop our reimbursement policy guidelines, as we determine, in accordance with one or more of the following methodologies:

- As shown in the most recent edition of the Current Procedural Terminology (CPT), a publication of the American Medical Association, and/or the Centers for Medicare and Medicaid Services (CMS).
- As reported generally by recognized professionals or publications.
- As used for Medicare.
- As determined by medical staff and outside medical consultants pursuant to other appropriate sources or determinations that we accept." AR 279-80.

23. After reciting this provision of the Plan, Defendant's rejection letter further stated:

"Clinical Logic: Current Procedural Terminology (CPT code 44204 [(the procedure code for the colectomy at issue)] remains not supported. The medical records submitted don't include a

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

provider signature to authenticate the medical record. This means we can't verify the validity and accuracy of the service provided." AR 280.

24. Finally, Defendant's rejection letter explained that "this is your final level of internal appeal with us." AR 281. It also informed Patient that he has "the right to file a civil action under Section 502(a) of ERISA[.]" *Id.*

**v.    Defendant and Dr. Feiz's post appeal communications.**

25. On September 30, 2022, Defendant received Patient's authorization for Joshua Francisco to act on his behalf. AR 285-89. Patient signed and dated the authorization on September 21, 2022. AR 288. The authorization stated it would last for two years from the date of signature. *Id.*

26. Next, on November 3, 2022, Defendant finally responded to Dr. Feiz's request for the documents that Defendant relied on when rejecting his claim. AR 307-08. Defendant identified four documents that it "used in making the [coverage] determination": (1) the Plan's Certificate of Coverage; (2) the Explanation of Benefits Defendant sent Dr. Feiz after it denied his claim; (3) Defendant's appeal letter; and (4) the letter Defendant sent Dr. Feiz rejecting his appeal. AR 308. Defendant did not identify any of Patient's medical records as a material it relied on when rejecting Dr. Feiz's claim. *See id.*

27. On November 16, 2022, Emsurgcare mailed Defendant a copy of a signed operative report from Dr. Feiz (reproduced below).[8] Plaintiff's Supplemental Administrative Record ("Supp. AR") at AR 1622-27, ECF No. 62-1 There is no indication in the Administrative Record that Defendant took any action based on this submission.

---

[8] This document is not part of the administrative record submitted by Defendant. However, as explained later in this order, the Court will consider this extra-record evidence when evaluating whether Defendant was impacted by a conflict of interest. It is therefore appropriate to include this evidence in the Court's findings of fact.

| | : | |
|---|---|---|
| Initials of Preparer | | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |



### vi.    Dr. Feiz unsuccessfully appealed one more time.

28. On May 12, 2023, Dr. Feiz and Emsurgcare submitted a second appeal of Defendant's denial of Dr. Feiz's colectomy claim. AR 498-99. This second appeal argued that Defendant's denial of coverage violated the terms of the Plan and ERISA "by using an unknown fee schedule." *Id.* It also highlighted the fact that before Dr. Feiz performed the colectomy, he received prior authorization. AR 499. Feiz and Emsurgcare did not attach an authorization from Patient to the second appeal. *See* AR 498-99.

29. On May 31, 2023, Defendant denied Dr. Feiz's second appeal because it lacked patient authorization. AR 512. Specifically, the denial letter stated: "Your request either did not include the required authorization or the authorization submitted did not include all the necessary information." *Id.*

:

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

### D. Dr. Rim's claim for reimbursement under the Plan.

#### i.    Defendant partially denied Dr. Rim's claim for reimbursement.

30. On June 22, 2021, Dr. Rim billed Defendant $71,500 for Patient's colectomy, for which Dr. Rim served as assistant surgeon. AR 35-43.

31. With one exception, Dr. Rim's submission for reimbursement to Defendant exactly matched Dr. Feiz's. *Compare* AR 3-11 and AR 35-44. The only difference was that Dr. Rim's claim listed "Sean Rim" as the "Servicing Physician" while Dr. Feiz's claim listed himself. *Compare* AR 10 and 42.[9]

32. On July 1, 2021, Defendant accepted Dr. Rim's claim but only paid $2,691.36 of the billed $71,500. AR 72. Defendant provided two explanations for this reduction. First, it explained that:

> "This claim is reimbursed with CMS (Centers for Medicare and Medicaid Services) reimbursement guidelines for assistant surgeon claims when the assistant surgeon is a physician. The reimbursement on this claim represents 16% of the allowable amount for eligible surgical procedures." *Id.*

Second, Defendant provided that:

> "This claim has been paid at 100% of usual, customary and reasonable allowance for the services provided." *Id.*

33. The same day, Defendant sent a corresponding Explanation of Benefits, which reiterated its reasons for reducing its reimbursement of Dr. Rim's claim. AR 78.

---

[9] Dr. Rim's billing documents are just as indecipherable as Dr. Feiz's. *See supra*, footnote 7.

:

_____    _____
Initials of Preparer              DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

### ii.    Dr. Rim appealed Defendant's reduction of coverage.

34.  On August 15, 2022, Dr. Rim appealed Defendant's benefits reduction. AR 249. The appeal argued that Defendant's reduction was arbitrary and capricious. *Id.* It also requested "all medical records used in making this medical necessity denial." AR 250. As with Dr. Feiz's initial appeal, Dr. Rim's appeal was signed by Joshua Franco. AR 252.

35.  Dr. Rim's appeal attached a Patient authorization. AR 253. The authorization named "Emsurgcare-Dr. Farzin Feiz[]" as Patient's authorized representative. *Id.* Patient signed and dated the authorization on May 14, 2021. The authorization stated that it "will expire one year from the date [Patient] sign[s] the authorization." *Id.*

### iii.    Defendant internally withdrew Dr. Rim's appeal.

36.  On September 12, 2022, Defendant withdrew Dr. Rim's appeal. AR 689. Defendant explained in internal notes that there was "invalid member consent/authorization on file." *Id.* The note also stated "HIPAA letter sent to provider & member." *Id.* This "HIPAA letter" is not in the administrative record.

37.  In the proceeding months, Plaintiffs communicated with Defendant three times over the phone regarding Dr. Rim's claim: on October 7, 2022; December 1, 2022; and January 25, 2023. AR 297, 484, 486. Defendant did not take meaningful notes on the substance of these calls. *See id.*

### E. Defendant partially reimbursed the hospital for services related to Patient's colectomy.

38.  On July 16, 2023, Defendant sent a letter to Marina Del Rey Hospital (the "Hospital"), where

:

_____        _____

Initials of Preparer                DTA

_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

Plaintiffs performed Patient's colectomy. The letter informed the Hospital that Defendant would not make any additional payments on the Hospital's claim for services it provided to Patient for his appendicitis treatment. Supp. AR 1641.[10]

## IV.    Conclusions of Law

"The Employee Retirement Income Security Act of 1974 (ERISA) permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). Before the Court analyzes whether Defendant's denial of Plaintiffs' claims violated ERISA, it must first determine what standard of review to apply to Defendant's decisions: abuse of discretion or de novo.

### A.  Standard of Review

#### i.    Defendant's benefits decisions are reviewed under an abuse of discretion standard.

"[A] denial of benefits is to be reviewed under a de novo standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 632 (9th Cir. 2009) (cleaned up) (quotations omitted). "[F]or a plan to alter the standard of review from the default de novo to the more lenient abuse of discretion [standard], the plan must unambiguously provide discretion to the administrator." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). Benefit plans that "grant[] the power to interpret plan terms and to make final benefits determinations" satisfy this standard. *Id.*

---

[10] This document is not part of the administrative record Defendant submitted. The Court will, however, consider this document when evaluating whether a conflict of interest influenced Defendant's decision to deny benefits. It will therefore include this document in its findings of facts.

|  | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

Here, the Plan unambiguously gives Defendant discretion to make benefits decisions. The Plan gives Defendant the "final authority" to "[i]nterpret Benefits" and to "[m]ake factual determinations relating to Benefits." AR 745. It also explicitly states that Defendant makes "administrative decisions regarding whether the [Plan] will pay for any portion of the cost of a health care service [Patient] intend[s] to receive or have received." *Id.* This Plan language is sufficient to confer discretion on Defendant, meaning the Court must apply an abuse of discretion standard. *See Cambel v. UnitedHealthcare Ins. Co.*, No. 2:23-cv-08823, 2024 WL 4328837, at *3 (C.D. Cal. Aug. 13, 2024) (applying an abuse of discretion standard when the plan's language gave the administrator "discretionary authority to interpret the Plan's terms and make factual determinations relating to benefits").

        **i.**       **Due to Defendant's violations of ERISA procedures, the Court will apply a "tempered" abuse of discretion standard.**

Even when a benefits plan gives the administrator discretion to decide benefits, if "an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well, we review de novo the administrator's decision to deny benefits." *Abatie*, 458 F.3d at 972-73. This level of procedural violation is a "rare class of cases." *Id.* at 972. A "procedural irregularity in processing an ERISA claim does not usually justify de novo review." *Id.*

Rather, the usual course of action when an administrator commits a procedural irregularity is to "weigh" that irregularity "in deciding whether an administrator's decision was an abuse of discretion." *Id.* The degree of consideration depends on the degree of procedural error. If "an administrator can show that it has engaged in an ongoing, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity." *Id.* (quotations omitted) (cleaned up). But a "more serious procedural irregularity may weigh more heavily." *Id.* All to say, if there are nontrivial "procedural irregularities in the claim review process, the abuse of discretion standard that is applied by the district court will be 'tempered' by heightened

:

_____    _____
Initials of Preparer              DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

skepticism." *Hoffman v. Screen Actors Guild Producers Pension Plan*, 757 F. App'x 602, 604 (9th Cir. 2019) (citing *Abatie*, 458 F.3d at 959).

Here, while Defendant did not commit procedural irregularities serious enough to justify de novo review, it nonetheless committed numerous procedural violations when adjudicating both Dr. Feiz and Dr. Rim's claims. These violations justify tempering the abuse of discretion standard.

### a. Procedural violations in the adjudication of Dr. Feiz's claim

#### 1) Defendant did not provide specific enough reasons for denying Dr. Feiz's claims.

"Under federal law, an ERISA plan 'shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant: (1) the specific reason or reasons for the denial; (2) specific reference to pertinent plan provisions on which the denial is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) (quoting 29 C.F.R. § 2560.503-1(f)).

Put simply, "what [ERISA] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. If benefits are denied in whole or in part, the reason for denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for denial; if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it." *Id.*

:

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

Defendant failed to satisfy this standard when denying Dr. Feiz's claim. When Defendant first denied his claim, they said it was because the claim was missing required information. But despite certainly knowing what information Dr. Feiz's claim lacked, Defendant made no attempt to identify the deficiency. It merely provided that:

> "[O]ne or more of the following items are missing: history and physical; findings on examination; lab, radiology, pathology and anesthesia test result; consult reports; operative/procedure report; daily progress/treatment/medication notes; physician orders for DME along with copy of invoice and delivery statement."

AR 103.

This laundry list of potentially missing items does nothing to inform Dr. Feiz of what exactly was missing from his claim. Nor does this explanation connect the missing documents to any particular Plan provision. Such a boilerplate and nonspecific explanation does not provide "specific reason or reasons for the denial" or "a description of any additional material or information necessary for the claimant to perfect the claim[.]" *Booton*, 110 F.3d at 1463.

Defendant's denial of Dr. Feiz's appeal suffers from similar deficiencies. As is clear now from Defendant's trial briefing, the only deficiency in Dr. Feiz's claim was that his operative report did not contain a digital signature that conformed to Defendant's requirements. Def. Mot. for Judgment at 2, ECF No. 59.

But Defendant did not make that clear when it denied Dr. Feiz's appeal. Rather, when justifying its denial, it cited the Plan's reimbursement policies. These policies simply state the methodologies Defendant uses when developing reimbursement policy guidelines. *See* AR 279-80. They have nothing to do with missing signatures or Patient's operative report.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

And while the denial eventually noted that the "medical records submitted don't include a provider signature to authenticate the medical record," this explanation still falls short. Dr. Feiz submitted close to 150 pages of medical records. *See* AR 536-678. That "the medical records" lacked a signature is not specific enough an explanation. Indeed, how is Dr. Feiz supposed to know which medical record lacked a signature?

To be sure, it appears from Plaintiffs' briefing that Dr. Feiz figured out that Defendant was referring to the operative report. Pl. Opening Trial Brief at 11. But this does not detract from the fact that Defendant's denial failed to comply with ERISA's requirement that any claim denial provide "(1) the specific reason or reasons for the denial; (2) specific reference to pertinent plan provisions on which the denial is based; [and] (3) a description of any additional material or information necessary for the claimant to perfect the claim[.]" *See Booton*, 110 F.3d at 1463.

> **2) Defendant did not provide Dr. Feiz with adequate opportunity to respond to Defendant's rationale for denying his appeal.**

"[I]f a plan administrator relies on a new or additional rationale during the review process, the administrator must provide the rationale to the claimant and give her reasonable opportunity to respond." *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1185 (9th Cir. 2022) (citing 29 C.F.R. 2650.503-1(h)(4)(ii)). Accordingly, "[w]hen an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures." *Abatie*, 458 F.3d at 974.

That is exactly what happened here. When Defendant initially denied Dr. Feiz's claim, it stated only that the claim was missing required documentation. AR 102. In response, Dr. Feiz submitted Patient's medical records. Defendant did not inform him of any issues with the operative report at that time. Instead, it waited until denying his appeal to assert—for the first time—that the "medical records" lacked a proper

|   |   | : |   |
|---|---|---|---|
|   | Initials of Preparer | DTA |   |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | | Date | July 31, 2025 |
|---|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

signature. AR 280. And in that same letter, Defendant told Dr. Feiz that this was his "final level of internal appeal with [Defendant]," effectively depriving him of any opportunity to respond. AR 279-80.

That "medical records" lacked a signature was a "new or additional rationale during the review process" for denying Dr. Feiz's claim, and thus Defendant had an obligation to give Dr. Feiz "reasonable opportunity to respond." *See Collier*, 53 F.4th at 1185. But it did not do so. Defendant did not ask Dr. Feiz to provide a signed copy of the operative report. Rather, it denied his appeal outright and informed him that he had no further right to internal appeal. *See* AR 279-80. In so doing, Defendant "preclude[ed] [Dr. Feiz] from responding to [Defendant's] rationale for denial at the administrative level," thereby violating ERISA's procedural requirements. *See Abatie*, 458 F.3d at 974.

**3) Defendant did not adequately respond to Dr. Feiz's request for the documents it relied on when denying his claim.**

When an administrator fails to respond to a plaintiff's request for the materials the plan administrator relied upon when denying benefits, it commits a "violation of ERISA regulations." *See Lukas v. United Behav. Health*, 504 App'x 628, 630 (9th Cir. 2013).

For example, in *Lukas v. United Behav. Health*, a plan beneficiary asked the plan administrator for "a complete copy of [the administrator's] case file on [him]" after the administrator denied him benefits under his ERISA plan. *Id.* at 629-30. In responding to the plaintiff's request, the plan administrator "failed to provide" the plaintiff with notes "in [the administrator's] possession" that "contain[ed] a . . . complete articulation of their rationale" for denying benefits. *Id.* The Ninth Circuit held that this failure "constituted [a] violation of ERISA regulations." *Id.* (citing 29 C.F.R. § 2560.503-1(h)(2)(iii)).

Defendant makes similar procedural violations in this case. When submitting his appeal, Dr. Feiz requested that Defendant provide "all medical records used in making this medical necessity denial." AR 209. Defendant responded with: (1) the Plan's Certificate of Coverage; (2) the Explanation of Benefits

|  | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

Defendant sent Dr. Feiz after it denied his claim; (3) Defendant's appeal letter; and (4) the letter Defendant sent Dr. Feiz rejecting his appeal. AR 308.

These documents were not responsive to Dr. Feiz's request. As is clear now from Defendant's trial briefing, it denied Dr. Feiz's appeal because the operative report was not signed. Accordingly, any collection of documents used in denying Dr. Feiz's appeal should necessarily include the unsigned operative report and the portion of the Plan that gives Defendant the authority to deny Dr. Feiz's claim based on a missing signature. But Defendant provided neither. Just as the administrator in *Lukas* failing to provide documents capable of explaining the plan administrator's claim denial violated ERISA procedures, so too does Defendant's failure to provide relevant documentation in this case. *See* 504 App'x at 629-30.

In sum, Defendant committed numerous procedural violations when adjudicating Dr. Feiz's claim and his subsequent appeal. These violations were not trivial—they represented a consistent failure to engage in "meaningful dialogue" with Dr. Feiz. *See Booton*, 110 F.3d at 1463. Accordingly, while the Court will not change the standard of review, it will apply a "tempered" abuse of discretion analysis. *See Hoffman*, 757 F. App'x at 604.

### b. Procedural violations in the adjudication of Dr. Rim's claim

#### 1) Defendant did not provide specific enough reasons for denying Dr. Rim's claims.

Defendant also failed to provide sufficient specificity when denying Dr. Rim's claim. As is now apparent from Defendant's briefing, when denying Dr. Rim's claim, Defendant first priced Patient's colectomy at the 70th percentile of the Fair Health Benchmarks Database for the appropriate date range and locality. Def. Mot. for Judgment at 11 ¶ 42; AR 1618. It then paid 16% of that amount, pursuant to an alleged "Assistant Surgery Policy." *See id.*

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

Like with Defendant's denial of Dr. Feiz's claims, Defendant did not make these justifications clear when denying Dr. Rim's claim. Defendant's claim denial did not mention Fair Health Benchmarks. Nor did it reference an "Assistant Surgery Policy," though it did explain that Dr. Rim was receiving "16% of the allowable amount for eligible surgical procedures." AR 72. Rather, Defendant's denial of Dr. Rim's claim simply stated that his claim was "reimbursed in accordance with [CMS] reimbursement guidelines for assistant surgeon claims" with no elaboration as to what specifically those guidelines were. *See id.*

To make matters more confusing, Defendant explained that Dr. Rim's claim was "paid at the 100% of usual, customary and reasonable allowance," even though the Plan does not pay for emergency outpatient services based on the usual, customary, and reasonable rate. *See id.* Indeed, Defendant admits as much in its briefing, writing: "The Plan, however, does not include the term 'UCR.'" Def. Opposing Trial Brief at 19. This presents an obvious question: if the Plan does not include the term "UCR," then why did Defendant justify its reduction of Dr. Rim's claim through reference to the "usual, customary, and reasonable rate?" *See* AR 201.

Finally, Defendant's denial of Dr. Rim's claim makes no reference "to pertinent plan provisions on which the denial is based." *See Booton*, 110 F.3d at 1463. This, combined with Defendant's failure to provide full explanation of its denial decision until its trial briefing, constitutes a procedural violation sufficient to warrant tempering the abuse of discretion standard. Though because Defendant committed comparatively fewer procedural violations when adjudicating Dr. Rim's claim than when adjudicating Dr. Feiz's, the Court will temper the abuse of discretion standard comparatively less for Dr. Rim.

## B.  Conflict of Interest

If "the same entity that funds an ERISA benefits plan also evaluates claims, . . . the plan administrator faces a structural conflict of interest: since it is also the insurer, benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator retains the money for itself." *Montour*, 488 F.3d at 629.

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
| --- | --- | --- | --- |

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
| --- | --- |

That is exactly the case here. Defendant is both the administrator and the insurer of the Plan. Def. Mot. for Judgment at 1 (describing Defendant as "the claims administrator and the insurer of a fully insured ERISA-governed health plan"). There is therefore a conflict of interest in this case that the Court must consider when applying the abuse of discretion standard.

"While not altering the standard of review itself, the existence of a conflict of interest is a factor to be considered in determining whether a plan administrator has abused its discretion." *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012). "The weight of this factor depends upon the likelihood that the conflict impacted the administrator's decision making." *Id.* "Where, for example, an insurer has taken active steps to reduce potential bias and to promote accuracy, the conflict may be given minimal weight in reviewing the insurer's benefits decisions." *Id.* (quotations omitted). By contrast, a "court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails to adequately investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." *Abatie*, 458 F.3d at 968.

Unlike evaluation of the merits of an ERISA claim, where review is limited to the administrative record, "[e]vidence outside the administrative record is properly considered in determining the extent to which a conflict of interest affected an administrator's decision." *Stephan*, 697 F.3d at 929.

Here, there are multiple reasons to find that a conflict of interest impacted Defendant's decision to deny Dr. Feiz's claim.

### i.    Defendant never asked Dr. Feiz for a corrected operative report.

**First** up is the fact that Defendant never asked Dr. Feiz for a signed copy of the operative report. If Defendant were acting solely as a neutral administrator concerned with verifying the "validity and

:

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

accuracy of the service provided," it would have given Dr. Feiz an opportunity to correct the issue, especially since he had received no prior notice of any problem with the operative report. But Defendant made no such request. This failure to seek readily available, clarifying information—information that would have supported the claim—suggests that Defendant was acting to protect its own financial interests as the insurer, not to ensure a fair and accurate claim determination. *See Abatie*, 458 F.3d at 968 (holding that courts may give more weight to a conflict of interest where the administrator "fails adequately to . . . ask the plaintiff for necessary evidence").

>        ii.    **Defendant received a signed operative report from Dr. Feiz and did not consider it.**

**Second**, extra-record evidence suggests that Defendant did in fact receive a signed operative report from Dr. Feiz yet declined to consider it. Plaintiffs submitted documentation showing that, on November 16, 2022, Emsurgcare mailed Defendant a signed copy of the operative report. Supp. AR at 1622-27, ECF No. 62-1. Both the letter cover page and operative report signature are reproduced below.

:

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

## EMSURGCARE INC.

2601 Airport Drive Suite 380 Torrance CA 90505 | TAX ID: 82-2520878

| To: | CLAIMS DEPARTMENT | From: | EMSURGCARE INC. |
|---|---|---|---|
| Co: | UNITED HEALTHCARE | Pgs. | 10 (incl. cover pg.) |
| Address: | PO BOX 31387 Salt Lake City, UT 84131 | Fax: | (424) 250-1689 |
| RE: | CLAIM RECONSIDERATION | Date: | 11/16/2022 |
| PT: | | DOS: | |
| ID# | | Claim #: | CR81991843 |

**Dear Claims Administrator:**

As per our conversation with representative Rica H. with call reference # 23606126, we were advised to submit the operative report with signed member authorization for the claim to be reprocessed.

We would like to get this processed as soon as possible. If there is anything else needed, please contact me at phone number (424) 352-0036.

Enclosed are 10 pages including coversheet.

Thank you,

*Niko Kim Timothy R.*
Claims and Appeals Specialist

| Admission Date | Admission Type | Discharge Date | Discharge Disposition |
|---|---|---|---|
| May 7, 2021 | Emergency | May 12, 2021 | Home |

==Operative Report signed by Feizbakhsh, Farzin Michael, MD at 5/7/2021 6:23 PM==

| Author: Feizbakhsh, Farzin Michael, MD | Service: Surgery General | Author Type: Physician |
|---|---|---|
| Filed: 5/7/2021 6:23 PM | Date of Service: 5/7/2021 6:17 PM | Note Type: Operative Report |
| Status: Signed | Editor: Feizbakhsh, Farzin Michael, MD (Physician) | |

**OPERATIVE REPORT**

DATE OF OPERATION: 5/7/21

PATIENT NAME:

PREOPERATIVE DIAGNOSIS:

1. Acute Appendicitis

POSTOPERATIVE DIAGNOSIS:

1. Acute Perforated Appendicitis With Phlegmon

OPERATION(S) PERFORMED:

1. Laparoscopic appendectomy with cecectomy

2. Transversus abdominis plane block

SURGEON: Farzin Feizbakhsh, M.D.

ASSISTANT: Sean Rim MD

ANESTHESIA: General endotracheal anesthesia with local anesthesia

:

Initials of Preparer                DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | | Date | July 31, 2025 |
|---|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

Notably, Defendant does not argue that it never received this corrected report. Instead, it points to a procedural issue: that the authorization accompanying the submission had expired six months earlier, on May 14, 2022. But this objection misses the point. Authorization is only required when a provider is acting on a patient's behalf—such as when filing an appeal. That is not what happened here. Emsurgcare simply sent additional documentation in support of an already-pending appeal, for which Plaintiffs had already submitted authorization.

Defendant also asserts that the cover letter "does not prove that it was actually sent to and received by Oxford." Def. Opp. Trial Brief at 14. While that may be technically correct, this is not a trial about whether a letter was definitively received. It is a bench trial to determine whether Defendant violated ERISA. And in that context, the evidence of mailing is highly persuasive, especially given that Defendant provides no evidence that it did not receive the letter.

Moreover, Defendant's own arguments at trial undercut its claim that Plaintiffs never sent the signed operative report. To support its position that Plaintiffs were aware of the deficiencies in the report, Defendant pointed to the first page of a letter Plaintiffs purportedly sent on November 16, 2022. That page reads: "as per our conversation with [Defendant's representative] . . . we were advised to submit the operative report with signed member authorization for the claim to be reprocessed." Supp. AR 1624. But if Defendant wants the Court to credit the first page of this letter as evidence that Plaintiffs knew the operative report was deficient, it cannot ignore the rest of the document. The third page of the same letter is the signed operative report. Supp. AR 1627. Defendant cannot have it both ways. If the letter is credible enough to establish Plaintiff's knowledge of a deficiency, it is also credible enough to establish that Defendant received the signed operative report.

Defendant makes a similar error through its reliance on another document in Plaintiffs' supplemental record: Plaintiffs' notes from their November 16, 2022 call with Defendant.[11] AR 1619.

---

[11] By citing these notes in their argument, Defendant implicitly opens the door to the Court's consideration of them.

Initials of Preparer     DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | | Date | July 31, 2025 |
|---|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | | |

Those notes stated: "Requested for a claim to be reprocessed/for consideration. Medical records submitted including the signed operative report and member authorization." *Id.* If Defendant asks the Court to accept these notes as credible evidence of the conversation, it must also accept their plain assertion that Plaintiffs submitted the signed operative report. After all, it is reasonable to infer that Plaintiffs would not have documented the submission unless it actually occurred.

In sum, there is strong—and unrefuted—evidence that Defendant received a signed operative report from Dr. Feiz. If so, that would mean that Dr. Feiz corrected the very deficiency that Defendant cited in denying his claim. A neutral plan administrator, faced with this new evidence, would reasonably be expected to reprocess the claim now that the operative report's authenticity was no longer in question. To be sure, Dr. Feiz submitted the corrected report after his final appeal, but only because Defendant first disclosed the alleged deficiency in its final denial. A fair-minded administrator would have acknowledged this timing and considered the corrected report. Defendant did not. This "fail[ure] to credit [Dr. Feiz's] reliable evidence" further supports the conclusion that its structural conflict of interest—its financial incentive to deny claims—influenced its decision. *See Abatie*, 458 F.3d at 968 (explaining that an administrator's failure to credit reliable evidence is evidence that a claim denial was influenced by the administrator's conflict of interest).

**iii.    Defendant paid the surgical facility for Patient's colectomy.**

**Third**, extra-record evidence suggests that Defendant paid Marina Del Rey Hospital (the "Hospital"), the facility where Plaintiffs performed Patient's colectomy, for their services. Plaintiffs submitted a letter from July 16, 2023, where Defendant informed the Hospital that it was "unable to issue any ***further*** payment" on the Hospital's claim for reimbursement of the surgical services it provided Patient. Supp. AR 1641 (emphasis added). The obvious implication of Defendant's use of the phrase "further payment" is that it had previously paid a portion of the Hospital's claim, even if not the full amount. *See id.*

|  | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

This partial payment raises serious questions about Defendant's justification for denying Dr. Feiz's claim. By reimbursing the Hospital for services related to the same colectomy, Defendant effectively acknowledged that the procedure occurred. Yet in denying Dr. Feiz's claim, Defendant cited an allegedly deficient operative report as grounds for being unable to "verify the validity and accuracy of the service provided." AR 280.

Those two positions cannot be squared. Either the colectomy happened, or it did not. And in either case, both the Hospital and Dr. Feiz would have relied on the same operative report to substantiate their claims. If the report was sufficient to justify payment to the Hospital, it is difficult to understand how it could also serve as a basis to deny Dr. Feiz's claim outright—without even offering an opportunity to cure the supposed defect.

To be sure, one could reasonably argue that an unsigned operative report might suffice to support payment for the Hospital's services—which relate to the setting and support of surgery—but fall short of justifying payment to Dr. Feiz, whose claim hinges more directly on the details of the surgery itself. But even if that distinction holds, Defendant's partial payment to the Hospital—whose services were clearly tied to Patient's colectomy—indicates that Defendant believed the surgery occurred. At a minimum, this undermines the notion that Defendant doubted the colectomy altogether. And if Defendant accepted that the surgery happened, it would have been reasonable to give Dr. Feiz an opportunity to cure the alleged deficiency in his operative report. That it made no such effort suggests that Defendant did not view Dr. Feiz's claim as fraudulent, yet still declined to process it fairly.

In short, Defendant's decision to partially pay the Hospital's claim while denying Dr. Feiz's suggests that the alleged concern over the missing signature was merely a pretext for denying benefits. This, in turn, is evidence that Defendant was influenced by its financial incentive to deny Dr. Feiz's claim—in other words, by its conflict of interest.

To wrap up, while not determinative, the Court's finding that Defendant's conflict of interest impacted Defendant's decision to deny Dr. Feiz's claim will weigh in favor of finding that Defendant

| | : | |
|---|---|---|
| Initials of Preparer | | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
| --- | --- | --- | --- |

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
| --- | --- |

abused its discretion. *See Demer v. IMB Corp. LTD Plan*, 835 F.3d 893, 899-900 (9th Cir. 2016) ("A conflict of interest is a factor in the abuse-of-discretion review, the weight of which depends on the severity of the conflict.").

### C.  Objections to Extra-Record Evidence

"Judicial review of an ERISA plan administrator's decision on the merits is limited to the administrative record." *Montour*, 588 F.3d at 632. "In the ERISA context, the 'administrative record' consists of 'the papers the insurer had when it denied the claim.'" *Id.* at 632 n.4 (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1086 (9th Cir. 1999)).

There are, however, two main exceptions to this general rule. First, "the court may take additional evidence when the irregularities have prevented full development of the administrative record." *Abatie*, 458 F.3d at 972-73. Second, as explained above, "[e]vidence outside the administrative record is properly considered in determining the extent to which a conflict of interest affected an administrator's decision." *Stephan*, 697 F.3d at 929.

In its current form, the administrative record submitted by Defendant includes 1,618 pages. *See* ECF No. 61-1. Plaintiffs ask the Court to expand that to include five new categories of documents. Defendant objects to each request. The Court will address each in turn.

### i.    Archived pages from Defendant's website

Plaintiffs submit a six-page archived copy of Defendant's website from 2019, which they sourced from the "Wayback Machine," an internet service that provides copies of webpages from prior years. Supp. AR 1634-39. The webpage explains that Defendant often refers to FAIR Health Benchmarks when determining the reasonable and customary rate of medical services. Supp. AR 1634-35.

:

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

The Court will consider this webpage because it helps remedy a procedural error by Defendant—
specifically, its failure to inform Plaintiffs that it used Fair Health Benchmarks to calculate the
reimbursement owed to Dr. Rim. Defendant should have included this information in their explanation for
why they reduced Dr. Rim's claim, as ERISA demands that plan administrators provide the "specific
reason or reasons" why a claim is denied or reduced. *See Booton*, 110 F.3d at 1463. Had Defendant
disclosed its reliance on Fair Health, Plaintiffs likely would have submitted this webpage during their
internal appeal to challenge the figures Defendant used. That would have made the webpage part of the
administrative record. Accordingly, to "recreate what the administrative record would have been had"
Defendant complied with ERISA's requirements, the Court will consider this archived webpage in its
abuse of discretion analysis.

### ii.    FAIR Health Benchmarks for colectomy's

Next, Plaintiffs submit a chart which they claim represent Fair Health Benchmarks for the pricing
of a laparoscopy colectomy in 2021. Supp. AR 1640. These figures differ from the Fair Health
Benchmarks Defendant relied on in pricing Patient's surgery. *Compare* Supp. AR 1640 with AR 1618.

For the same reasons that the Court will consider Defendant's archived webpage that discusses
Defendant's use of Fair Health Benchmarks, the Court will also consider these Fair Health figures. As
with the webpage, had Defendant disclosed its use of Fair Health Benchmarks from the start, Plaintiff
would have plausibly submitted these alternative figures in its appeal. Thus, because these figures would
have been in the administrative record had Defendant fully complied with ERISA procedures, the Court
will consider them now. *See Abatie*, 458 F.3d at 973 ("[T]he court may take additional evidence when
[procedural irregularities] have prevented full development of the administrative record.").

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
| --- | --- | --- | --- |

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
| --- | --- |

### iii.    Plaintiffs' notes from calls with Defendant

Plaintiffs ask the Court to consider notes that they took on calls with Defendant during the claim
and appeals process. To start, Plaintiffs' notes are not materials that Defendant could have relied on when
making a coverage decision. So they do not warrant the Court's consideration unless they will remedy a
procedural irregularity or shed light on a conflict of interest.

Plaintiffs contend that consideration of the notes is necessary to remedy a procedural deficiency:
that Defendant failed to provide any recordings of the more than 20 calls that Plaintiffs had with
Defendant. Pl. Opening Trial Brief at 26. But the Court disagrees. Plaintiffs provide no authority to support
their contention that a plan administrator violates ERISA's procedural requirements when it fails to
include audio recordings of calls between the administrator and the beneficiary in the administrative
record. Moreover, it would be especially strange for such an omission to violate ERISA's procedural
requirements in this case, as it is not even clear that Defendant has any audio recordings of its calls with
Plaintiffs.

That said, the Court will still consider Plaintiffs' notes—not to fix a procedural error, but because
they help illuminate the effect of Defendant's conflict of interest. As discussed earlier, the notes describe
a conversation in which Defendant told Plaintiffs to submit a signed operative report, and Plaintiffs then
did so. *See* Supp. AR 1619-20. This is relevant to whether Defendant received the report but ignored it,
which could suggest that its decision was improperly influenced by its financial interest in denying the
claim.

### iv.    Letter containing the signed operative report

Plaintiffs request that the Court consider documents showing that it mailed a signed version of Dr.
Feiz's operative report to Defendant on November 16, 2022. Supp. AR 1624-33. The Court already
explained that it will consider these materials when analyzing whether Defendant's conflict of interest
affected its decision making. *See supra*, Section IV.B.

:

| Initials of Preparer | DTA |
| --- | --- |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

That said, it will not consider these materials on the merits, as they do not belong in the administrative record. The administrative record is limited to materials that Defendant relied on when making its coverage decision. *Montour*, 588 F.3d at 632 n.4. Defendant purportedly received the signed operative report in November 2022, after it already denied Dr. Feiz's claim and his subsequent appeal. Defendant therefore could not have considered these documents when making its benefits decision.

### v.    Defendant's letters to the Hospital

Lastly, Plaintiffs submit for the Court's consideration letters between Defendant and Marina Del Rey Hospital, the facility at which Plaintiffs performed Patient's colectomy. Supp. AR 1641-50. As the Court outlined above, it will consider at least some of these materials when analyzing Defendant's conflict of interest.

But as with the signed operative report, the Court will not consider Defendant's letters to the Hospital when evaluating the merits of Plaintiffs' claims. To start, the first letter is from 2023, and thus Defendant could not have considered it when denying Plaintiffs' claims for reimbursement. Moreover, even regarding the letters that predate Defendant's claim denial, the letters make no mention of Plaintiffs or their claims, so it is unlikely that Defendant relied on these letters when making its benefits decision.

### D.   Whether Defendant abused its discretion

A plan administrator violates ERISA when it fails to "properly administer[] the Plan[] pursuant to the Plan terms." *Wit v. United Behav. Health*, 79 F.4th 1068, 1087 (9th Cir. 2023). When, as here, courts evaluate that question through an abuse of discretion standard, the analysis becomes quite simple: "[t]he administrator's interpretation is an abuse of discretion," and thus a violation of ERISA, "if the interpretation is unreasonable." *Id.*

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|----------|-------------------|------|---------------|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|-------|------------------------------------------------------|

"This reasonableness standard requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Stephan*, 697 F.3d at 929 (quotations omitted). Likewise, an administrator "abuse[s] their discretion where they construe provisions of a plan in a way that clearly conflicts with the plain language of the Plan, renders nugatory other provisions of the Plan, or lacks any rational nexus to the primary purpose of the Plan. *Tapley v. Locs 302 & 612 of Int'l Union of Operating Engineers-Emps. Const. Indus. Ret. Plan*, 728 F.3d 1134, 1140 (9th Cir. 2013). When interpreting Plan language, courts begin the "inquiry with the plain language of the Plan, interpreting it in an ordinary and popular sense as would a person of average intelligence and experience." *Id.*

With the legal context set, the Court now turns to the two questions before it: did Defendant abuse its discretion when denying Dr. Feiz's claim in full and Dr. Rim's claim in part? The Court will tackle each question individually.

        **i.**      **Defendant abused its discretion by denying Dr. Feiz's claim and subsequent appeal.**

Neither party disputes that the colectomy Dr. Feiz performed is covered under the Plan. Rather, the question is whether Defendant abused its discretion by denying Dr. Feiz's claim on the basis that the signature on his operative report was not proper. The Court holds that the answer is yes.

Put simply, Defendant's decision to deny Dr. Feiz's claim and subsequent appeal was "implausible." *See Stephan*, 697 F.3d at 929. Review of the administrative record shows that Defendant did not actually hold concerns about the validity and accuracy of Plaintiff's colectomy, but rather used the lack of proper signature on Dr. Feiz's operative report as a pretext to deny benefits. Denial of benefits on such basis is an abuse of discretion.

**First**, it was obvious from the nearly 150 pages of medical records Dr. Feiz submitted to Defendant that he did in fact perform Patient's colectomy. First, there is the operative report itself. While it certainly

                                          :

Initials of Preparer           DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

did not include a time stamped and dated signature that Defendant insists on, it nonetheless listed Dr. Feiz as the primary surgeon on Patient's colectomy, provided copious supporting details on the surgery, and included the term "signed" in the heading. AR 537.

Dr. Feiz's role as the lead surgeon was consistently backed up by other medical records. The consult report listed Dr. Feiz as the physician performing Patient's surgery consult. AR 540. The signed pathologist's report listed Dr. Feiz as one of Patient's doctors and confirmed that Patient was suffering from "acute suppurative appendicitis," a condition that almost inevitably requires emergency surgery. AR 543. Dr. Feiz himself signed—in a format Defendant approves of—a progress note describing Patient's post-surgery progress in the initial days post operation. AR 557. A utilization review noted that Patient received an "appendectomy" and that "Dr. Feiz[] was following." AR 555-57. And last, a signed "ISP Hospitalist Discharge Summary" confirmed that Patient received a colectomy and listed Dr. Feiz as Patient's "General Surgery" consultant. AR 654.

It is unreasonable for Defendant to review these medical records and conclude that it is impossible to confirm the accuracy of Dr. Feiz's surgery. *See* AR 280. Such a conclusion would require disregarding multiple signed medical records that clearly indicate that Dr. Feiz performed Patient's surgery. At the very least, the consistent reference to Dr. Feiz's participation should have prompted Defendant to ask Dr. Feiz to provide more information about his participation and remedy the deficiency in his operative report.

**Second**, it was unreasonable for Defendant to deny Dr. Feiz's claim based on his unsigned operative report while also partly accepting Dr. Rim's claim. Dr. Feiz and Dr. Rim submitted claims for the exact same surgery. That surgery necessarily produced the same operative report. In fact, outside of their own names, Dr. Feiz and Dr. Rim submitted ***identical*** claims for reimbursement to Defendant. *Compare* AR 3-11 and AR 35-43. Any concerns about the "validity and accuracy of the service provided" by Dr. Feiz should have naturally extended to Dr. Rim. And yet, Defendant partly accepted Dr. Rim's claim while rejecting Dr. Feiz's.

:

_____    _____

Initials of Preparer                           DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

Defendant claims that this is because it "auto-adjudicated" Dr. Rim's claim, which allegedly Defendant "routinely do[es] for reduced assistant surgeon claims." Def. Opp. Trial Brief at 17. This explanation, however, does not make Defendant's actions any more reasonable. Even if an automated system was partly responsible, Defendant still denied Dr. Feiz's claim based on a justification that was entirely inconsistent with its adjudication of Dr. Rim's claim. Such inconsistent decision making is not a reasonable exercise of Defendant's discretion as a plan administrator.

**Third**, Defendant completely failed to connect its denial of Dr. Feiz's claim to any portion of the Plan. In its appeal denial, it cited to the portion of the Plan regarding methodologies for developing reimbursement guidelines. AR 280. This section has nothing to do with Defendant's purported reason for denying Dr. Feiz's claim: the operative report's lack of a proper signature.

Moreover, Defendant failed to identify a specific portion of the Plan that justifies denying Dr. Feiz's claim based on the operative report's deficient signature. Certainly, it may seem obvious that an insurer is not obligated to pay for procedures it cannot verify. But notwithstanding that logical inference, Defendant still fails to point to any portion of the Plan that gives Defendant that authority.

Defendant's best attempt is reference to Defendant's "2021 UnitedHealthcare Care Provider Administrative Guide." AR 1231-1617. Chapter 10 of that guide explains that Defendant "may pend or deny [a provider's] claim if [they] do not list" the "[r]endering care provider's name, signature or representative signature[.]" AR 1336.[12] Defendant, however, fails to connect these guidelines to the terms of the Plan. It does not claim that the Plan incorporates these guidelines. Absent a connection between

---

[12] Defendant also cites to a "Medica Healthcare Supplement," which requires that "[f]or paper medical records, [providers must] have all entries dated or signed or initiated by the author. Author identification may be a handwritten signature or initials followed by title. . . . Electronic signatures are acceptable for electronic medical records." AR 1458. The Medica Healthcare supplement, however, only applies to Plan Members residing in Broward and Miami-Dade County, both of which are in Florida. AR 1448. This provision therefore does not apply to Plaintiffs. Defendant cited the Medica Supplement without disclosing that it applies only to Florida residents—a key limitation tucked deep within a 1,600-page administrative record. This lack of transparency comes uncomfortably close to breaching Defendant's duty of candor to the Court.

:

Initials of Preparer          DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

these 2021 guidelines and the Plan at issue in this case, Dr. Feiz's failure to comply with them is not a valid basis for denying his claim.

The Court weighs these unreasonable actions alongside Defendant's procedural violations and structural conflict of interest discussed above. These include: Defendant's vague and inadequate explanations for its denial; its failure to raise the signature issue until what it described as Dr. Feiz's final appeal; its refusal to request a corrected operative report despite ample evidence that the surgery occurred; its failure to acknowledge receipt of a signed operative report subsequently submitted by Emsurgcare; and its partial reimbursement to the Hospital for the very surgery it claimed could not be verified. Taken together, this pattern of conduct supports the conclusion that Defendant's stated concern about the operative report's signature was not genuine. Rather, it appears to have been a pretext—an excuse to deny reimbursement on a technicality in order to serve its own financial interests.[13] That is an abuse of discretion.

Accordingly, the Court remands Dr. Feiz's claim back to Defendant for proper adjudication of his claim according to the terms of the Plan.[14]

---

[13] Notably, Defendant admits in its trial briefing that Dr. Feiz did in fact perform Patient's surgery. Def. Mot. for Judgment at 7 ("Also on May 7, 2021, Patient DS underwent a surgery with Feiz as the primary surgeon and Rim as the assistant surgeon.").

[14] Defendant insists that if the Court finds an abuse of discretion with respect to Dr. Feiz, that the Court should simply award $16,821—the Fair Health 70th percentile figure for Patient's surgery—instead of remanding the case. It will not do so. While Defendant may feel that the 70th percentile Fair Health Benchmark is appropriate, the Plan is not so specific. The Plan merely requires that the amount paid be "permitted by law." It does not specify that the amount reimbursed match up with a specific percentile of the Fair Health Benchmark. Given that the Plan does not dictate that Defendant reimburse Dr. Feiz at a specific amount, the Court must leave the determination of his reimbursement to Defendant, as the Plan gives it, not the Court, the discretion to decide benefits.

:

Initials of Preparer          DTA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

### ii.      Defendant did not abuse its discretion by denying Dr. Rim's claim.

Defendant makes two arguments regarding Dr. Rim's claim: (1) he cannot bring ERISA claims because he failed to exhaust Defendant's internal appeal procedures; and (2) even if Dr. Rim could bring ERISA claims, Defendant did not abuse its discretion. For the reasons explained, the Court agrees with Defendant on both fronts. It will address each argument in turn.

### 1)  Dr. Rim failed to exhaust his administrative appeals.

As a general matter, "an ERISA plaintiff claiming a denial of benefits must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (quotations omitted). That said, "a claimant need not exhaust when the plan does not require it." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014) (quotations omitted). Accordingly, "whether a claimant must exhaust her claims depends on the terms of the operative plan." *Torres v. United Healthcare Ins. Co.*, No. 23-cv-1533, 2024 WL 3498861, at *8 (C.D. Cal. June 28, 2024) (quotations omitted).

Here, the Court finds that the Plan required Dr. Rim to exhaust Defendant's internal review procedures before suing in federal court. The Plan reads: "[Beneficiaries] cannot bring any legal action against [Defendant] to recover reimbursement until [they] have completed all the steps in the appeal process described in *Section 6: Questions, Complaints, and Appeals*." AR 819. That section states that to submit appeal, one must "contact [Defendant] in writing to formally request an appeal," and the "appeal request must be submitted to [Defendant] within 180 days after . . . the claim denial." AR 803-04. Moreover, if the appeal is filed by someone other than the beneficiary, such as a provider, the beneficiary "must provide [Defendant] with written consent at the time [the] complaint or appeal is submitted." AR 796. The takeaway from these sections is clear: Dr. Rim cannot bring ERISA claims until he has completed Defendant's internal appeals process, which requires submitting a written appeal and an authorization from Patient.

:

|  |  |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|----------|-------------------|------|---------------|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|-------|------------------------------------------------------|

Dr. Rim did not exhaust Defendant's internal appeal procedures before bringing this suit, as his one internal appeal did not include a valid patient authorization, a mandatory requirement for internal appeals under the Plan. *See* AR 796. The patient authorization attached to Dr. Rim's appeal, which he filed on August 15, 2022, expired on three months earlier on May 14, 2022. *See* AR 253. It also named Dr. Feiz and Emsurgcare as Patient's authorized representative, not Dr. Rim and ESA. *See id.*

But this does not end the Court's analysis. If "a plan fails 'to establish or follow claims procedures consistent with the requirements of [ERISA],' claimants are 'deemed to have exhausted their administrative remedies.'" *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014) (first quoting 29 C.F.R. § 2560.503-1(l)) (second quotations omitted) (cleaned up). One of ERISA's requirements is that plan administrators "notify a claimant . . . of the plan's benefit determination on review . . . not later than 60 days after receipt of the claimant's request for review by the plan[.]" 29 C.F.R. § 2560.503-1(i)(1)(i).

Plaintiffs contend that Defendant violated this requirement by never communicating to Dr. Rim or ESA that their patient authorization was deficient. If true, this would mean that Defendant "fail[ed] to . . . follow [ERISA's] claim procedures," and thus Dr. Rim would be "deemed to have exhausted [his] administrative remedies." *See Spinedex*, 770 F.3d at 1299. Defendant claims the opposite—that it did notify Plaintiffs of their deficient patient authorization, and thus Dr. Rim failed to exhaust his administrative remedies by failing to submit a corrected appeal.

Upon review of the administrative record and the available evidence, the Court finds that Defendant provided Dr. Rim and ESA with notice that their appeal lacked proper authorization. Defendant's internal notes from September 12, 2022 read: "invalid consent found on page 9 [of Dr. Rim's claim]," and "Case withdrawn, HIPAA letter sent to provider & member." AR 689.

As a threshold matter, it seems that "HIPAA letter" refers to Defendant's standard letter sent to providers who fail to submit a proper patient authorization—the same letters Defendant sent to Dr. Feiz.

|  | : |
|--|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

AR 241, 512. That standard letter includes a sample authorization form granting permission to use protected health information and explains that such information is required "pursuant to applicable regulations." *See* AR 241-43. Given that HIPAA is the primary federal regulation governing the use and disclosure of patient health information, it follows naturally "HIPAA letter" is Defendant's shorthand for these standard patient authorization deficiency notices.

All to say, Defendant's internal notes record that it sent Plaintiffs notice of Dr. Rim's deficient patient authorization. *See* AR 689. The complicating factor, however, is that this "HIPAA letter" is not in the administrative record. Plaintiffs argue that this means that Defendant never sent the letter at all.

The Court disagrees. To be sure, the absence of the HIPAA letter from the administrative record is troubling, especially since the record includes the HIPAA letters Defendant sent to Dr. Feiz. But just because the HIPAA letter is not in the administrative record does not mean it was not sent. Defendant plausibly could have sent the letter but then lost it in the intervening years. This would not be surprising given the practical realities of large-scale document management. Indeed, several years passed between the date the letter would have been sent and the creation of the administrative record, which comprises more than 1,500 documents spanning a multi-year period. In that context, the absence of a routine deficiency notice more likely reflects administrative oversight than evidence that no notice was sent.

This conclusion is consistent with the language of the internal note itself. It reads "HIPAA letter *sent*," in the past tense, suggesting that the note taker was recording a completed action, not an intended or assumed one.

It is also consistent with Defendant's behavior in Dr. Feiz's case. Dr. Feiz twice submitted appeals with deficient authorizations. *See* AR 212, 498. And both times, Defendant responded by sending HIPAA letters notifying Dr. Feiz of the deficiencies in his authorization. *See* AR 241, 512. While far from determinative, that Defendant gave Dr. Feiz's deficient authorizations suggests that it would have provided the same notice to Dr. Rim.

:

|  |  |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

It is, of course, possible that the note taker accurately recorded that the HIPAA letter was sent, but that it never reached Plaintiffs—perhaps due to mailing error or a breakdown in Defendant's communication process. But if that were the case, one would expect Plaintiffs to offer some evidence[15] that they never received the letter. And yet, Plaintiffs provide no declaration stating that they did not receive notice of the deficient authorization. Nor do they submit any other evidence to that effect.

This omission is particularly telling because Plaintiffs submitted other declarations in this case: one from Plaintiffs' counsel and one from Dr. Feiz. ECF Nos. 58-1, 58-2. So they clearly knew they could file declarations to support their arguments. Plaintiffs would have had every incentive to file another declaration from Dr. Rim on this issue. After all, whether Dr. Rim received notice of the deficiency in his authorization is central to whether he exhausted the appeals process. Accordingly, that Plaintiffs chose not to submit a declaration from Dr. Rim denying receipt of the letter makes it far more likely that he did receive it, just as Defendant's internal notes say. If he hadn't, a sworn statement to that effect would have been easy to provide. The Court sees no good reason why Plaintiffs would withhold that evidence—unless it did not exist.

In sum, given Defendant's documentary evidence and Plaintiffs' lack of evidence in rebuttal, the Court finds that Defendant did respond to Dr. Rim's appeal with a notice of deficiency. Accordingly, Defendant did not violate ERISA procedures, meaning Dr. Rim failed to exhaust Defendant's internal appeal procedures by failing to file a corrected appeal.

---

[15] While "a district court may review only the administrative when considering whether the plan administrator abused its discretion," the Court is engaging in a different inquiry here. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006). It is not asking whether Defendant abused its discretion interpreting the terms of the Plan or determining benefits. It is deciding whether Defendant sent Plaintiffs notice that Dr. Rim's patient authorization was deficient. This is factual issue entirely separate from the Plan and its terms. Accordingly, the Court does not infringe on the discretion afforded to Plan administrators by looking to extra-record evidence to decide this factual question.

:

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

> **2)  Even if Dr. Rim had exhausted his internal appeals,
> Defendant did not abuse its discretion in reducing his
> claim.**

The Plan reimburses for outpatient emergency services, such as the surgery provided by Dr. Rim, at "any amount negotiated by us or an amount permitted by law." AR 728. In executing those terms, Defendant paid Dr. Rim $2,691.36 of the $71,500 billed. AR 72.

Plaintiffs have not carried their burden of showing that Defendant abused its discretion by making this reduction. Certainly, $2,691.36 is a very small portion of the $71,500 billed. But it appears to nonetheless fall within the terms of the Plan. The Plan simply requires that Defendant pay "an amount permitted by law." AR 728. Plaintiffs have not identified any law that does not permit Defendant to pay

:

Initials of Preparer                    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

Dr. Rim $2,691.36 of his $71,500 billed.[16, 17] Given that Plaintiffs hold the burden of proof in this case, this is a fatal deficiency. *Gray v. Comcast's Long Term Disability Ins. Plan*, No. 09-cv-03810, 2010 WL 497679, at *6 (N.D. Cal. Dec. 2, 2010) ("The claimant bears the burden of proving that the claim administrator abused its discretion in the denial of benefits"); *see also Torres v. UnitedHealthcare Ins. Co.*, No. 23-cv-1533, 2024 WL 3498861, at *11 (C.D. Cal. June 28, 2024) (holding that the plan administrator did not abuse its discretion when it paid an assistant surgeon $286.68 of $49,000 billed where the Plan only required reimbursement at "an amount permitted by law").

---

[16] The Court has only identified one law that could be applicable in this case: California Health and Safety Code 1317.2a(d). That law states that "any third-party payor," including an "insurer," "shall be liable, to the extent of the contractual obligation to the patient, for the reasonable charges of the transferring hospital and treating physicians for emergency services provided[.]" Cal. Health & Safety Code § 1317.2a. In other words, insurers must pay for emergency services at a reasonable rate. But an exception in the law limits its applicability. If the third-party payor "has a contractual obligation to provide or indemnify emergency medical services under a contract which covers a subscriber or enrollee," then that payor's liability "shall be determined in accordance with the terms of that contract." In other words, if an insurance contract includes an obligation to provide emergency services, then "the insurer's obligation to pay the provider is set by the rates provided for in the applicable insurance policy." *Ata Mazaheri, M.D., Inc. v. UnitedHealthcare Insurance Co. Inc.*, No. 23-cv-0865-MWF (SKX), 2023 WL 5167362, *7 (C.D. Cal. July 10, 2023).

Here, the Plan does include an obligation to provide emergency services. *See* AR 726 ("Emergency Health Care Services are always paid as Network Benefits."). But the obligation is not specific. The Plan only states that it will pay "an amount negotiated by us or an amount permitted by law." AR 728.

This creates a bit of a circular problem. Because the Plan covers emergency services, Section 1317.2a only requires the Plan to reimburse for emergency services "in accordance with the terms of [the Plan]." But the Plan only requires payment of an amount "permitted by law," which sends the analysis right back to Section 1317.2a. If forced to break the cycle, the Court would conclude by using the language "permitted by law," the Plan implicitly contemplates application of Section 1317.2a's default rule, rather than its exception. But the Court does not need to reach this issue. As explained, even if the Plan's promise to pay "an amount permitted by law" carried with it an obligation to pay a reasonable rate, Defendant's payment to Dr. Rim still would not constitute an abuse of discretion. Accordingly, it does not matter whether Section 1317.2a "reasonableness" requirement applies to Defendant.

[17] Another potentially relevant law is the Knox-Keene Act, which requires that health care service plans reimburse emergency services at a reasonable rate. Cal. Health & Safety Code § 1371.4(b). The Act, however, does not apply to insurers like Defendant, who are governed instead by the California Insurance Code. *Ata Mazaheri*, 2023 WL 5167362, at *5; ECF No. 37 (explaining the applicability of the Knox-Keene Act).

| | : |
|---|---|
| | |
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|----------|-------------------|------|---------------|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|-------|-------------------------------------------------------|

Moreover, even if the Court assumes that there is some law requiring insurers to reimburse emergency services at a reasonable rate, Defendant still did not abuse its discretion by paying Dr. Rim $2,691.36, as the record shows that Defendant engaged in reasonable efforts to pay Dr. Rim a market rate for his services. First, Defendant looked to the "Fair Health Benchmarks Database," which collects data on the market price of medical procedures for a given locality and time period. Def. Mot. for Judgment at 19; AR 1618. Multiple authorities have described Fair Health Benchmarks as a valid tool for determining the usual, customary, and reasonable rate of a medical service. *See Coast Surgery Ctr. v. United Healthcare Ins. Co.*, No. 22-cv-02200, 2024 WL 5679158, at *4 (C.D. Cal. Oct. 25, 2024) ("The Fair Health database compiles [the] UCR Rate for medical services."); *Trends and Emerging Issues in Managed Care Litigation*, AHLA Seminar Papers, 20180624 ("[M]any health plans and insurers today use the 80th percentile of the FAIR Health, Inc. (FAIR Health) database as a benchmark for a reasonable measure of [usual, customary, and reasonable] rates.").

It then priced Patient's colectomy at the 70th percentile, which Defendant contends was $16,821. AR 1618. While not the 80th percentile that Plaintiffs argue for, it is certainly not unreasonable to use an above-median payment as a benchmark for the market rate.

Second, Defendant paid Dr. Rim 16% of that 70th percentile figure, in recognition that he was the assistant surgeon on Patient's surgery, not the primary. AR 103. This practice of paying only 16% of the allowable amount stems from Medicare and has been endorsed by at least one court. *See Talbot v. UnitedHealthcare Ins. Co.*, 2024 WL 847960, at *8 (C.D. Cal. Feb. 16, 2024) (holding that the plan administrator paying an assistant surgeon "16 percent of the amount paid on the Surgeon Claim" was "based on CMS rates" and "proper" "to the extent the amount paid on the Surgeon Claim was proper."). It also makes sense—assistant surgeons should not demand the same rate as primary surgeons. Plaintiffs recognized as much at trial, where they ceded that paying assistant surgeons 16% of the primary surgeon payment was not unreasonable.

|  | : |
|--|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

In short, to price Dr. Rim's claim, Defendant relied on a recognized pricing database and applied a standard assistant-surgeon reduction consistent with Medicare practices. On this record, reimbursing Dr. Rim $2,691.36 was not an abuse of discretion, even assuming the Plan imposed a duty to pay a reasonable rate.

Plaintiffs' arguments regarding the Fair Health Benchmarks Defendant used are unpersuasive. In opposition to the Fair Health figures that Defendant provide, Plaintiffs provide their own figures. Supp. AR 1640. These figures peg the Fair Health 70th percentile rate for a laparoscopic colectomy at $30,350, rather than the $16,821 figure Defendant used. *Compare* AR 1618 *with* Supp. AR 1640. Plaintiffs also submit an old copy of Defendant's website as evidence that Defendant should have used the Fair Health 80th percentile figure, not the 70th. *See* Supp. AR. 1635.

This evidence does not alter the Court's conclusion, for two reasons. **First**, it is unpersuasive on its face. Plaintiffs provide no explanation for why their Fair Health figures are different from Defendant's, and analysis of both suggest that Defendant's is more accurate. Plaintiffs' FAIR Health figures use "Nov 2021" as the date of service, while Defendant's use "January 1, 2021 – June 30, 2021." AR 1618; Supp. AR 1640. Patient's surgery was May 7, 2021, making Defendant's date, and in turn, their Fair Health benchmarks, more accurate.

Plaintiffs' reference to Defendant's old website is similarly ineffective. First, the website is from 2019, which puts into question its relevance given that Patient's surgery was in 2021. *See* Supp. AR 1634. Second, the website does not state that Defendant *always* uses the Fair Health 80th percentile. It reads: "Affiliates of UnitedHealth Group *frequently use* the 80th percentile of Fair Health benchmark Databases to calculate how much to pay for out-of-network services of health are professionals, *but plan designers and administrators of particular health care benefit plans may choose different percentiles for use with applicable health care benefit plans*." AR 1635 (emphasis added). In short, what percentile figure to use is up to the plan administrator's discretion.

|  | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|

| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* |
|---|---|

**Second**, even if the Court accepted Plaintiffs' numbers, that still wouldn't show an abuse of discretion. The question is not whether the Court would have picked a different reimbursement amount; it's whether Defendant's choice was unreasonable. And it wasn't. As already explained, using the 70th percentile from Fair Health and applying a 16% reduction based on Medicare guidance is a reasonable method. Put simply, reasonable methods can yield different results—that alone doesn't make Defendant's decision an abuse of discretion.

Lastly, the fact that Defendant didn't mention Fair Health Benchmarks when it reduced Dr. Rim's claim doesn't amount to an abuse of discretion. Defendant told Plaintiffs it paid "100% of the usual, customary and reasonable allowance." AR 72. While it didn't name Fair Health Benchmarks, that's the database Defendant used to determine what the usual, customary, and reasonable rate was. Courts have recognized that Fair Health is commonly used for this purpose. *See Coast Surgery Ctr.*, 2024 WL 5679158, at \*4 ("The FairHealth database compiles the [usual, customary, and reasonable] rate for medical services."). So Defendant's explanation, though vague, was broadly accurate. At most, Defendant failed to explain how it calculated the rate—not why it reduced the claim. And while that lack of detail may have been a procedural violation of ERISA, it is a small one, and the Court addressed it by allowing Plaintiffs to submit evidence about Fair Health benchmarks.

In any event, Plaintiffs weren't harmed by this lack of detail. They still understood the key issue—that Defendant had calculated a "reasonable" rate for Plaintiff's surgery that differed from the amount billed, and that their appeal needed to challenge that calculation. Whether Defendant's explanation said "usual, customary and reasonable rate" or "Fair Health" doesn't change the nature of the dispute or how Plaintiffs needed to respond.

In sum, for the foregoing reasons, the Court finds that Defendant did not abuse its discretion in reimbursing Dr. Rim $2,691.36 of the $71,500 billed.

:

Initials of Preparer                DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04612-SVW | Date | July 31, 2025 |
|---|---|---|---|
| Title | *Emsurgcare et al. v. Oxford Health Insurance, Inc.* | | |

## V.    Conclusion

For the foregoing reasons, the Court finds that Defendant abused its discretion when it denied Dr. Feiz's claim, and did not abuse its discretion when it denied Dr. Rim's claim. Accordingly, Plaintiffs' motion for judgment is GRANTED with respect to Dr. Feiz and DENIED with respect to Dr. Rim. Conversely, Defendant's motion for judgment is DENIED with respect to Dr. Feiz and GRANTED with respect to Dr. Rim.

The Court remands Dr. Feiz's claim back to the claim administrator for determination of how much he should be reimbursed under the Plan for Patient's colectomy.

**IT IS SO ORDERED.**

:

Initials of Preparer                    DTA